UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOMPHONE NASRICHAMPANG,<br><br>　　　　　　　　　　Petitioner,<br><br>　vs.<br><br><br>JAMES E. TILTON, Secretary,<br><br>　　　　　　　　　　Respondent.[1] | Civil No. 04cv2400-BTM (RBB)<br><br>**ORDER:**<br><br>**(1) ADOPTING AS MODIFIED THE FINDINGS OF UNITED STATES MAGISTRATE JUDGE;**<br><br>**(2) DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND**<br><br>**(3) ISSUING A CERTIFICATE OF APPEALABILITY** |

　　　　Petitioner is a California prisoner proceeding pro se, and with the assistance of counsel, with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner and his brother were convicted of first degree murder after testimony at their joint trial established that Petitioner drove his brother to find the victim, a man with whom Petitioner's brother had recently argued, and upon finding him verbally encouraged his brother to shoot the person, who died of his wounds. Petitioner claims his federal due process rights were violated by admission of statements of a juvenile accomplice, who was in the car and testified under a plea agreement, because the statements were the product of police coercion (claim one), and that he received ineffective assistance of counsel in several respects (claim two).

---

[1] The Court sua sponte substitutes James E. Tilton, the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), as Respondent in place of the former Respondent, Jeanne Woodford, the former Director of the CDCR's predecessor entity California Department of Corrections.

Presently before the Court is a Report and Recommendation ("R&R") submitted by United States Magistrate Judge Ruben B. Brooks, which recommends the Petition be denied. (Doc. No. 15.) With respect to Claim One, the Magistrate Judge found there was no clearly established federal law prohibiting admission of coerced third-party statements, but that even under a general due process approach the introduction of the testimony did not result in any fundamental unfairness, and that the state court's adjudication of the claim was therefore objectively reasonable within the meaning of 28 U.S.C. § 2254(d)(1) and (2). (R&R at 13-25.) As to Claim Two, the Magistrate Judge found that Petitioner was not prejudiced by defense counsel's failure to investigate or present the alternate defense that Petitioner was unaware his brother was armed (as opposed to the alibi defense presented at trial), because the outcome would have been the same under the natural and probable consequences doctrine, and found that the state court's adjudication of the remaining aspects of Claim Two was neither contrary to, nor involved an unreasonable application of, clearly established federal law. (R&R at 25-36.) The Magistrate Judge also criticized the fact that the Petition had been "gostwritten" by an attorney who neither signed the Petition nor made an appearance in this action. (R&R at 1, n.1.)

Counsel assisting Petitioner has filed objections to the R&R. (Doc. No. 17.) Counsel objects to the Magistrate Judge's criticism of how he chose to assist Petitioner, contending that his name appears on the pleading and it was therefore not "gostwritten," and objects to the findings with respect to Claim Two that there was no prejudice from defense counsel's failure to request a severance and failure to present the alternate defense that Petitioner did not know his brother was armed. (Obj. at 1-5.) The Court has reviewed the R&R pursuant to 28 U.S.C. § 636(b)(1), which provides that: "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C.A. § 636(b)(1) (West Supp. 2006). The Court has read and considered Petitioner's Objections and has reviewed the R&R under this standard. For the following reasons the Court adopts as modified the findings of the Magistrate Judge, denies habeas relief, and issues a Certificate of Appealability.

### I. Claim One

The Court **ADOPTS** in full the findings and conclusions of the Magistrate Judge with respect to Claim One, to which no party has objected. Habeas relief is **DENIED** as to Claim One for the reasons set forth in the R&R.

### II. Claim Two

Petitioner alleges in Claim Two that he received ineffective assistance of counsel because defense counsel: (1) failed to investigate, pursue or explain to Petitioner the alternate defense that Petitioner was unaware that his brother was armed; (2) failed to argue for a severance of Petitioner's trial from his brother's trial; (3) admitted Petitioner's guilt in the opening statement; and (4) informed the jury that the prosecution's key witness had taken a lie detector test. (Pet. at 6.) Petitioner only objects to the findings and conclusions of the Magistrate Judge with respect to the first and second aspects of Claim Two. The Court **ADOPTS** in full the Magistrate Judge's findings and conclusions with respect to the third and fourth aspect of Claim Two, to which no party has objected. With respect to the first and second aspects of Claim Two, the Court **ADOPTS AS MODIFIED** the findings and conclusions in the following manner.

Petitioner argues that defense counsel was deficient in relying on the investigation and defense presented by his brother's attorney during their joint trial, in particular the alibi defense that neither of them were at the crime scene. Petitioner now contends that he believed that he was headed to a fistfight with the victim and his friends, and had no knowledge that his brother was armed or intended to shoot the victim. (Pet. Mem. at 20; Traverse at 10.) Petitioner's defense attorney stated in a declaration attached to a state habeas petition consolidated with the direct appeal, that she informed Petitioner that he could benefit from not being tried along with his brother, and that "his best defense involved his lack of knowledge regarding his brother's intentions." (Lodgment No. 18, Ex. C at 2.) Defense counsel stated that Petitioner insisted on a joint trial, and "told me the only defense he would adopt was that he was not present. He would not let me argue the case in the alternative." (Id.) Petitioner stated in his own declaration attached to the same petition that he told defense counsel that he "did not know anyone would be killed and left it up to her to present the defense. She never told me there were different

1 defenses we could use." (Lodgment No. 18, Ex. A at 1.) He also contends that defense counsel
2 did not tell him he had a good chance to win if he had a separate trial, and that he would have
3 agreed to a separate trial if she had done so. (Id.) Petitioner argues here, as he did in state court,
4 that even assuming defense counsel is to be believed, he was prejudiced by the ineffective
5 assistance of his counsel, citing Phillips v. Woodford, 267 F.3d 966 (9th Cir. 2001) and Johnson
6 v. Baldwin, 114 F.3d 835 (9th Cir. 1997), for the proposition that defense counsel was deficient
7 in permitting him to present the weak alibi defense at the expense of the stronger alternate
8 defense notwithstanding his insistence of foregoing the alternate defense. (Pet. Mem. at 18-19.)

9       As the R&R acknowledged, the main evidence against Petitioner and his brother was
10 presented by Souksakhone Douangmal ("Souk"), who testified that he accompanied Petitioner
11 in Petitioner's car as Petitioner drove his brother to find the victim, a man with whom
12 Petitioner's brother had argued over the course of a week and who had a few hours before
13 vandalized Petitioner's brother's car. (R&R at 5.) Souk testified that Petitioner agreed to drive
14 his brother to find the victim after his brother said to Petitioner: "let's go get those fools," and
15 that Petitioner's brother had a gun visible in his waistband at the time. (Id.) However, Souk had
16 previously made a contradictory statement to the police to the extent that no one saw the gun
17 until they arrived at the scene. (Id.) Souk testified that when the group confronted the victim,
18 the victim ran and Petitioner told his brother to "shoot him," and Petitioner drove away with the
19 headlights turned off after the shooting. (Id. at 5-6.) At trial, one witness identified Petitioner's
20 brother as the shooter, and several witnesses identified the car involved in the shooting as similar
21 to Petitioner's car. (Id. at 6.)

22       The state appellate court applied Strickland v. Washington, 466 U.S. 668 (1984), but did
23 not consider the performance prong of the claim. (Lodgment No. 21, People v. Nasirichampang,
24 No. D038282, slip op. at 35-36 (Cal. Ct. App. 2003).) Rather, it denied the claim on the prejudice
25 prong alone, finding that the "natural and probable consequences" doctrine applied, stating in
26 part:

27    In this case, the evidence that [Petitioner] agreed to "go get these fools" and drove [his brother], who was armed with a gun, to find [the victim] is sufficient to
28    convict [Petitioner] of murder because [the victim's] murder was a natural and probable consequence of the planned assault. For that reason, [Petitioner] has

|   |   |
|---|---|
| 1 | failed to show that he was prejudiced by his counsel's failure to put on this alternative defense, as well as his counsel's failure to independently investigate his defense. |
| 2 | |

3  (Id. at 37.)

4  The Magistrate Judge found that Petitioner was not prejudiced by defense counsel's
5  failure to present the defense in question because "the outcome of the trial would have been the
6  same" even if defense counsel had presented the defense. (R&R at 31.) That finding was in turn
7  based on the conclusion that in order for this defense to have been viable, Souk's testimony
8  would have to be rejected, which in turn could only happen if this Court found both the jury and
9  the appellate court's findings that Souk's testimony was credible to be an objectively
10 unreasonable determination of the facts within the meaning of 28 U.S.C. § 2254(d)(2). (Id.)

11  Petitioner contends the Magistrate Judge erroneously relied on People v. McCoy, 25
12 Cal.4th 1111, 1117 (2001) for the proposition that the natural and probable consequences
13 doctrine apples here, because, according to Petitioner, the McCoy case makes clear that the
14 doctrine does not apply where, as here, the jury was not instructed on the doctrine. (Obj. at 4.)
15 Petitioner argues the R&R overlooks controlling state law in People v. Hickles, 56 Cal.App.4th
16 1183, 1197 (1997), which he contends provides that the doctrine does not apply where the
17 evidence would have supported aiding and abetting simple assault and assault with a deadly
18 weapon. (Id.) Petitioner objects that the R&R distinguished his situation on the basis that the
19 natural and probable consequences instruction was not given due to defense counsel's request
20 that it not be given, arguing that defense counsel's failure to insist on the instruction is a product
21 of her deficient performance in failing to present the defense. (Id.) Finally, Petitioner objects
22 to the Magistrate Judge's finding that because the record supports a finding the jury believed
23 Souk's testimony, the outcome of the trial would have been the same. Rather, Petitioner
24 contends the record merely reflects that the jury accepted Souk's otherwise unreliable testimony
25 over the utterly implausible defense that Petitioner was not at the scene. (Id. at 4.)

26  Petitioner contends the state appellate court erred in its application of Strickland in
27 several respects. First, the state court relied too heavily on Souk's "evolving" testimony to find
28 that Petitioner was aware his brother was going to commit an armed assault. (Pet. Mem. at 21.)

1  Second, he contends the state court incorrectly found that a passenger in the back seat of the car,
2  whom Petitioner contends would have testified that Petitioner did not tell his brother to shoot
3  the victim and that no one in the car was aware that Petitioner's brother was armed, was awaiting
4  trial and would likely not have testified, because that person had in fact already pled guilty to
5  voluntary manslaughter.  (Id.)  Finally, the state court noted that Jay Cleveland, a friend of
6  Souk's, told police that Petitioner belonged to the same gang as Petitioner's brother, and
7  therefore a severance would not have permitted Petitioner to introduce evidence of the gang
8  membership of the victim, despite the fact that the police had no evidence that Petitioner was in
9  fact a gang member.  (Id.)  Petitioner contends that the incorrect application of the natural and
10 probable consequences doctrine demonstrates the flaw in the Magistrate Judge's finding that
11 defense counsel's failure to seek a severance did not prejudice Petitioner.  (Obj. at 5.)

12      The test under Strickland requires Petitioner to "show that there is a reasonable
13 probability that, but for counsel's unprofessional errors, the result of the proceeding would have
14 been different."  Id. at 694; Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  This Court must
15 apply 28 U.S.C. § 2254(d)(1) to the state court's ineffective assistance of counsel analysis, rather
16 than §§ 2254(d)(2) or (e)(1).  Williams, 529 U.S. at 406-09.

17      Applying 2254(d)(1) to the state court opinion, it is clear that the state court's application
18 of the Strickland prejudice test to deny this claim was objectively reasonable.  The jury returned
19 a special finding that Petitioner was armed with a handgun during the murder.  (Lodgment No.
20 1, Clerk's Tr. at 371.)  Arguing to the jury that Petitioner was unaware that his brother was
21 armed does not support a reasonable probability that the outcome would have been different for
22 the reasons set forth by the state court, namely, because under the natural and probable
23 consequences doctrine, which the jury would have been instructed on if such a defense had been
24 presented, Petitioner would have been liable for murder if it was proven, as it was, that he knew
25 his brother was armed when he drove him to the scene to "get" the victim.  There is support in
26 the record for defense counsel's statement that she discussed the alternate defenses with
27 Petitioner, including the fact that defense counsel joined a motion for severance on the basis of
28 incompatible and antagonistic defenses.  (Lodgment No. 21, People v. Nasirichampang, No.

D038282, slip op. at 15-16.) If Petitioner insisted on the alibi defense and refused to allow his attorney to argue the other defense even in the alterative, for the obvious reason that he did not want to implicate his brother in the killing, he cannot now complain that his insistence on forgoing a better defense for himself at the expense of weakening his brother's defense, or at the risk of foregoing a chance of being acquitted if the alibi defenses were believed, amounted to ineffective assistance of counsel. However, the resolution of the dispute between Petitioner and his attorney is not necessary for a ruling on this claim, because, as the state court correctly found, Petitioner cannot show prejudice by counsel's failure to present the defense.

Petitioner's reliance on McCoy for the proposition that the state court could not apply the natural and probable consequences doctrine here is unavailing. The citation stands for the unremarkable proposition that where the jury has not been instructed on the natural and probable consequences doctrine, the defendant could not be convicted of murder under that doctrine. McCoy, 25 Cal.4th at 1117 ("Nothing we say in this opinion necessarily applies to an aider and abettor's guilt of an unintended crime under the natural and probable consequences doctrine.") The state appellate court here merely found that had the defense been raised, the jury would have been instructed on the doctrine, and there was no reasonable probability of a different outcome, because the jury had found that Petitioner was aware that his brother was armed and he would therefore have been liable for murder in any case because murder was a natural and probable consequence of the planned assault. (Lodgment No. 21, People v. Nasirichampang, No. D038282, slip op. at 36-37.) Petitioner's reliance on People v. Hickles, 56 Cal.App.4th 1183, 1197 (1997) is similarly misplaced. The Hickles court noted that where the evidence permitted a jury to find that a defendant had aided and abetted non-criminal activity (such as believing he was going to help a friend settle a dispute in a legal manner), as well as aiding and abetting a crime which could be viewed as leading to murder as a natural and probable consequence, such as assault, and there was evidence that he had no knowledge that the person he was aiding was armed or was intending to commit an assault, then the natural and probable consequences doctrine might permit a jury to improperly convict the aider and abetter of murder. Id. However, unlike Hickles, there is no evidence that Petitioner intended to aid his brother in a non-

1 criminal confrontation with the victim. In fact, Petitioner has taken the position that he believed
2 that he was headed to a fistfight with the victim and the victim's friends. (Pet. Mem. at 20;
3 Traverse at 10.)

4     Petitioner argues that he could have provided testimony from a backseat passenger in the
5 car, whose case was severed and who entered a guilty plea to voluntary manslaughter prior to
6 Petitioner's trial, to the extent that Petitioner's brother "never informed anyone in the car of his
7 intention to shoot the victim," and that Petitioner "never encouraged [his brother] to shoot the
8 victim." (Lodgment No. 18 at 7.) However, the evidence that the gun was visible and that
9 Petitioner drove his brother to assault the victim belies any contention that Petitioner's brother's
10 failure to announce his intention to shoot the victim precluded Petitioner from being aware that
11 the shooting of the victim was foreseeable. That, coupled with the jury's specific finding that
12 Petitioner was armed during the commission of the offense, precludes a finding of a reasonable
13 probability of a different outcome had the alternate defense been raised.[2]

14     Both cases cited by Petitioner in support of his contention that his counsel should not
15 have allowed him to pursue the alibi defense irrespective of whether he had insisted on doing
16 so, Phillips and Johnson, are, as the state appellate court noted, distinguishable. In Johnson, the
17 defense attorney was deficient for presenting an alibi defense through the testimony of the
18 defendant which was so implausible that it destroyed the defendant's credibility, because any
19 competent investigation into the alibi would have revealed it was utterly implausible. Johnson,
20 114 F.3d at 839-40. The Court found that the defendant was prejudiced under Strickland

---

[2] The jury was instructed: "In the allegations as charged in Count one, namely, personal use of a firearm as it applies to [Petitioner's brother] and armed with a firearm as it applies to [Petitioner] there must exist a union or joint operation of act or conduct and general criminal intent." (Lodgment No. 1, Clerk's Tr. at 183.) The trial judge explained to the jury that the allegation as to Petitioner was not that he had used a gun, but that it was alleged that he was vicariously liable for his brother's use of the gun. (Lodgment No. 2, Reporter's Tr. at 1499.) The prosecution's theory as argued to the jury was that Petitioner was guilty of first degree murder as an aider and abettor by driving his brother to the scene while sharing the intent to assault the victim with a firearm, and/or by encouraging him to shoot the victim once they arrived. (Id. at 1595-96.) Thus, although the allegation that Petitioner was armed has no scienter requirement (see People v. Overten, 28 Cal.App.4th 1497, 1501 (Cal.Ct.App. 1995)), and the jury was therefore not instructed that they had to find that Petitioner knew his brother was armed in order to return a true finding on the allegation, by finding Petitioner liable under an aiding and abetting theory under the facts of this case, the jury necessarily found that he was aware his brother was armed.

because, had counsel investigated properly, he could have advised the defendant to defend against the rape charges by admitting he was present but arguing that no rape occurred (a strategy which resulted in the acquittal of defendant's brother who was also charged with the same rape), or to elect not to testify at all and thereby deprive the prosecution of the adverse credibility determination which "probably tipped the balance against him" since the state's case was so weak. Id. Unlike Johnson, the state's case here was not weak, Petitioner's brother was not acquitted of the crime, and the alternate defense was not strong. In Phillips, the defense attorney gave as a reason for not pursuing an alternate defense (the defendant fired only after feeling threatened) to an alibi defense, that it would have been unethical to assist the defendant in committing perjury regarding two incompatible defenses. Phillips, 267 F.3d at 978. The court found that the weakness of the alibi defense revealed that the attorney never actually believed it, and that the defendant had raised a colorable claim of prejudice because the alternate defense might have resulted in the defendant avoiding the death penalty. Id. at 983. Here, even had defense counsel presented the alternate defense, it would have not have lessened Petitioner's culpability nor potentially reduced his sentence.

With respect to the second aspect of Claim One, that defense counsel was ineffective for failing to seek a severance of Petitioner's trial from his brother's, Petitioner's counsel in fact joined in the brother's motion for severance on the basis of conflicting defenses, although the motion was never ruled on, apparently through inadvertence, resulting, as the state court found, in a waiver. (Lodgment No. 21, People v. Nasirichampang, No. D038383, slip op. at 16.) The state appellate court found that Petitioner had failed to establish ineffective assistance of counsel because he had failed to show prejudice for the same reasons set forth above. (Id. at 38.) That decision was objectively reasonable within the meaning of 28 U.S.C. § 2254(d)(1) for the same reasons discussed above.

The Court therefore **ADOPTS AS MODIFIED** the findings and conclusions of the Magistrate Judge and **DENIES** habeas relief. However, mindful of the low threshold for issuance of a Certificate of Appealability, the Court issues a Certificate of Appealability with respect to all claims presented in the Petition. See Lambright v. Stewart, 220 F.3d 1022, 1024-25 (9th Cir. 2000) (providing that threshold "substantial showing of the denial of a constitutional

right," is met by demonstrating that: (1) the issues are debatable among jurists of reason; or (2) that a court could resolve the issues in a different manner; or (3) that the questions are adequate to deserve encouragement to proceed further).

### III.  Conclusion and Order

Based on the foregoing, the Court:

(1) **ADOPTS** as modified the Magistrate Judge's findings and conclusions as set forth above; (2) **DENIES** the Petition for writ of habeas corpus; and (3) **ISSUES** a Certificate of Appealability as to all claims presented in the Petition.

**IT IS SO ORDERED.**

DATED:  January 12, 2007

*[signature]*

Hon. Barry Ted Moskowitz
United States District Judge